

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  *Plaintiff,*<br><br>v.<br><br>ROBERT BERNARDINI,<br><br>  *Defendant.* | CIVIL ACTION No. 6:05CR00016<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

This matter is currently before the Court on Defendant's Motion to Suppress, on which the Court conducted a hearing on September 21, 2005. In light of the reasons enumerated below, Defendant's Motion to Suppress is hereby DENIED.

BACKGROUND

On September 5, 2001, United States District Judge Wilson issued a search warrant for "the premises known as 1047 Falling Rock Drive, Amherst, VA 24521." The warrant authorized the seizure of:

> Records and information relating to violations of 18 U.S.C. Section 1341 and Section 371 including: documents, records in paper form, electronic form, digital form and computer generated form including but not limited to: business financial records, general ledgers, check registers, cash receipts journals, listings of cash received, money orders received and checks received, copies of the corporation charter, copies of minutes from annual meetings, documents disclosing the identity of PRI's Suppliers of Energy Products, invoices, canceled checks, bank statements, returned checks, checks, U.S. currency, written correspondence, wire transfer records, electronic funds transfer records, electronic

transaction records from credit card purchases, customer order forms, customer records, USPS delivery and signature confirm documents, mailing statements, mailing records, wholesale purchase records, identity of distributors of PRI products, canceled checks paid to distributors, all PRI employee records including payroll distribution and tax withholding information, tax returns, telephone records, internet service provider records and logs, samples of various products offered and corresponding solicitations for future analysis.

The warrant was based on an affidavit by Postal Inspector J. David McKinney which detailed his extensive investigation of several of Defendant's mailing operations. The officers executed the warrant and seized numerous documents from Defendant's building. The government now seeks to introduce evidence seized in the search in a prosecution for tax evasion. Defendant contests and is seeking to suppress all of the evidence obtained in the search.

## DISCUSSION

The Fourth Amendment requires a valid warrant to be issued by a neutral and detached magistrate, based on probable cause, and to describe with particularity the place to be searched and the things to be seized. U.S. Const. Amend. IV. Unless an exception under the good faith doctrine exists, evidence obtained outside of these requirements is subject to exclusion from a criminal prosecution. *Mapp v. Ohio*, 367 U.S. 643 (1981); *U.S. v. Clutchette*, 24 F.3d 577 (4th Cir. 1994). The sufficiency of a search warrant and its supporting affidavit is reviewed de novo to determine whether there was a substantial basis for the magistrate's decision, but the court gives substantial deference to a neutral and detached magistrate's determination of probable cause. *U.S. v. Oloyede*, 982 F.2d 133, 138 (4th Cir. 1992). In addition, the Court limits itself to considering the information presented to the magistrate who made the probable cause determination. *U.S. v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996).

## I VALIDITY OF THE WARRANT

The Defendant makes several arguments in favor of the exclusion of the evidence seized

from his property. He argues that the warrant is facially overbroad because it described the classes of items to be seized without providing a more particular description or focusing on the "primary basis of the search warrant," which he takes to be the Energy Mug. This argument fails on several grounds. Inspector McKinney's affidavit makes clear that the Energy Mug was only one of several potential mail fraud schemes. The affidavit also describes some of Defendant's other enterprises, including the "Super 2-Plus-2 Program" (which promises to show how the author mailed two letters and made $15,000 in a month), the sale of "Green Harmony" tablets (advertised through a solicitation titled "Your Vitamins & Supplements are being POISONED"), and the "Three Ways to Wealth" program (describing how participants can make large sums of money by mailing solicitations for the program). Although the affidavit refers to the Energy Mug as the primary basis for the warrant, it was clearly only one of numerous schemes that aroused the suspicion of Inspector McKinney.

In addition, the degree of specificity required in a warrant varies depending on the information available to the government. *U.S. v. Jacob*, 657 F.2d 49, 52 (4th Cir. 181); *U.S. v. Shilling*, 826 F.2d 1365 (4th Cir. 1987) (overruled on other grounds, *Staples v. U.S.*, 511 U.S. 600 (1994)). Here, the government's knowledge of the contents of Defendant's office derived only from his mail carrier, who had been on the premises several times but had no detailed information on where records were located or in what medium they were kept. Providing greater specificity as to where and in what media to search was thus not feasible. In addition, the potentially fraudulent schemes described in the affidavit were complex and overlapping, making a more detailed warrant impractical. *See Jacob*, 657 F.2d at 52.

Defendant also argues that the warrant fails because it provided no guidelines to rein in the executing officers' discretion. The cases he cites on this point are inapposite, however; they

refer to situations where the officer was required to determine what was "obscene" or what was copyrighted material, both legal issues with large potential grey areas. Here, no such nuanced decision was demanded of the officers.

Defendant argues that the warrant lacks particularity because it refers only to the federal statutes for fraud and conspiracy without providing greater detail on the actual crime committed. Warrants supported by only a citation to a general criminal statute such as fraud or conspiracy are generally disfavored. *U.S. v. Dickerson*, 166 F.3d 667 (4th Cir. 1999) (overruled on other grounds, 530 U.S. 428 (1999)). Rather, the warrant must be limited in some way by reference to a particular crime, such as narcotics or the theft of fur coats. *Id. See also Jacob*, 657 F.2d at 52 (upholding a warrant which contained a broad list of documentary evidence to be seized, but was limited to that evidence relating to certain persons or events). Here, the warrant falls squarely under *Dickerson*'s prohibition: it offers no further description of the crime or any limitation by time or subject matter, but only refers generally to the federal statutes for mail fraud and conspiracy.

Where a warrant lacks sufficient particularity, however, an affidavit attached to the warrant may cure it. *See U.S v. Washington*, 852 F.2d 803, 805 (4th Cir. 1988). In this case, the evidence establishes that the executing agents received a copy of the warrant with the affidavit attached, and that they reviewed both before conducting the search. The affidavit discussed extensively the basis of the warrant for mail fraud and conspiracy, and thus sufficiently limited the executing officers' discretion. The copy of the warrant left at the Defendant's office did not include the affidavit. The Court need not decide whether this is fatal to the warrant, however, because of the application of the good faith exception to the exclusionary rule under *United States v. Leon*, discussed infra.

The Defendant argues that the warrant issued also exceeded the scope of probable cause by including tax documents among the items to be seized when the warrant was issued for suspected mail fraud and conspiracy. However, all of the documents described in the warrant had some relation to the specified criminal activity described in the warrant. *See U.S. v. Oloyede*, 982 F.2d 133, 138 (4th Cir. 1992). Defendant fails to consider the role that tax documents play in proving the conspiracy and fraud charges. One of the elements of a mail fraud case is that the defendant knowingly participated in a scheme to obtain money or property by false pretenses. 18 U.S.C. § 1341. Tax and financial documents are relevant to show whether the defendant did in fact obtain money or property, certainly a useful fact in determining scienter. Further, as Inspector McKinney testified at the hearing on September 21, 2005, some of the Defendant's suspicious mailings involved the creation of trusts, and hence Defendant's trust documents fell within the scope of probable cause.

For its part, the government argues that the warrant is valid under the "permeated with fraud" doctrine approved in *U.S. v. Oloyede*, 982 F.2d 133 (4th Cir. 1992). In *Oloyede*, the government seized all of defendant's documents based on an affidavit describing his repeated involvement in immigration fraud. This evidence gave the magistrate probable cause to believe that the defendant's activities were pervasively fraudulent, because the suspected criminal activity described in the affidavit was pertinent to all of the defendant's activities. *Id.* at 139. The court found that if the defendant engaged in other activities besides immigration fraud, they were a de minimis part of his business and were not severable from his immigration practices. *Id.*

Under *Oloyede*, the government may not seize legitimate files even when it has evidence of an extensive fraud scheme in one discrete area of a business. But where there is probable cause to believe business is permeated with fraud, a warrant can authorize seizure of all documents

related to criminal area. *Id.* at 141. The *Oloyede* standard does not require the affidavit to show that every part of the enterprise is engaged in fraud, but rather to provide enough information for the magistrate to find probable cause to believe the fraud listed in the affidavit is only the tip of the iceberg. *Id.* at 140.

In this case, Defendant apparently conducted legitimate activities out of the searched building; he stored children's books and costumes there, and kept a draft of a children's book he was writing on one of the mirrored hard drives. Inspector McKinney, however, testified that the defendant's business and personal documents were intertwined, making it impossible for agents to distinguish between items related to legitimate business and items related to potentially fraudulent business. There is no evidence that the agents improperly seized information that was discrete and severable from the Defendant's schemes. Further, the information submitted in the affidavit certainly meets the "tip of the iceberg" standard described in *Oloyede*. *See id.* at 140. The number and character of the Defendant's schemes described suggests that a thorough search would only uncover more. Hence, the broad authorization in the warrant is valid under the "permeated with fraud" doctrine.

## II EXECUTION OF THE WARRANT

Further, the seizure of some items not listed in the warrant does not invalidate the entire search, as the Defendant argues. The Fourth Circuit has held that invalidation is an extraordinary remedy to be used only when the search devolves into an impermissible general search and the officers flagrantly disregard the warrant's terms. *U.S. v. Robinson*, 275 F.3d 371, 382 (4th Cir. 2001). *See also U.S. v. Fawole*, 785 F.2d 1141, 1144 (4th Cir. 1986) (holding that the fact that officers seized some irrelevant items does not invalidate the search as a whole). Here, some of the items seized did fall outside the scope of the warrant. However, Defendant's business and

personal records and possessions were intermingled and the agents did not probe into any protected areas or conduct a general rummaging, but merely looked for evidence where they had probable cause to believe it might be. *See Maryland v. Garrison*, 480 U.S. 79, 84-85 (1987); *U.S. v. Hoang Anh Thi Duong*, 156 F. Supp. 2d 564, 572 (E.D. Va. 2001) (determining that the permissible scope of a search is defined by the object of the search and the places in which there is probable cause to believe it may be found). Hence it is clear that blanket suppression is not warranted in this case.

### III  GOOD FAITH DOCTRINE

Even if Defendant's arguments had some merit on these points, however, the good faith doctrine under *United States v. Leon* prevents suppression. Even where a warrant is ultimately found invalid, a court will not suppress evidence obtained under it unless a "reasonably well-trained officer would have known the search was illegal despite the magistrate's authorization." *U.S. v. Leon*, 468 U.S. 897, 922 n.23 (1984). Evidence may still be suppressed, however, where (1) the affiant knew the affidavit was false or was reckless as to its falsity; (2) the magistrate wholly abandoned his judicial role; (3) the affidavit was so lacking in indicia of probable cause as to render good faith reliance on it unreasonable; or (4) the warrant was so facially deficient that executing officers could not reasonably presume it to be valid. *Id.* at 923. None of those exceptions applies in this case. Although the warrant was broad, it was not so facially deficient as to bar reliance on it. This is a less demanding showing than the substantial basis threshold needed to prove probable cause in the first instance, *U.S. v. Bynum*, 293 F.3d 192, 196 (4th Cir. 2002), and this warrant easily clears that threshold. Nor is there any evidence that the issuing judge wholly abandoned his judicial role or that the warrant lacked any indicia of probable cause.

Defendant does imply that Inspector McKinney acted in bad faith when preparing the

affidavit for the warrant by excluding information that might tend to show that Defendant's business was not fraudulent. However, the mere fact that McKinney did not provide Judge Wilson with every page of Defendant's voluminous mailings in no way shows that McKinney knew or was reckless to the affidavit's falsity. Defendant does not claim that McKinney lied on the affidavit, and the fact that he did not search the internet for other suppliers of Defendant's products in no way undermines the evidence he did present to Judge Wilson. Defendant's other arguments for suppression in his Reply (including his suggestion that the powers of "left" and "right spin" alleged in his mailings are supported by science) are equally meritless.

Finally, Defendant argues that a second warrant was needed when his tax documents were delivered to the IRS. The only authority he cites for this proposition is an unpublished decision from the Northern District of West Virginia where the court did not actually address the necessity of a second warrant. As Defendant offers no legal support for his argument and the Court knows of none, this contention is also denied.

In sum, the Court finds that the warrant in this case was valid and supported by probable cause, and to the extent that any defects in it do exist, the good faith doctrine nonetheless requires admissibility.

Defendant's Motion to Suppress is therefore DENIED.

An appropriate order shall issue this day.

ENTERED: _/s/ Norman K. Moon_
U.S. District Judge

October 18, 2005
Date